**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000445**
**10-JUL-2019**
**08:03 AM**

NO. CAAP-17-0000445
(Consolidated with No. CAAP-17-0000446)

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

**CAAP-17-0000445**

HL, Petitioner-Appellee,
v.
NSL, Respondent-Appellee,
and
AL, Proposed Intervenor-Appellant

and

**CAAP-17-0000446**

HL, Petitioner-Appellant,
v.
NSL, Respondent-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(UCCJEA NO. 16-1-6004)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Chan and Hiraoka, JJ.)

These consolidated appeals arise from a proceeding
under the Uniform Child-Custody Jurisdiction and Enforcement Act,
Hawaii Revised Statutes (**HRS**) Chapter 583A (**UCCJEA**). The opening
briefs filed by Petitioner-Appellee/Appellant HL (**Father**) and
Proposed Intervenor-Appellant AL (**Grandfather**)[1] fail to comply

---

[1] Grandfather's opening brief (JROA doc. 65, filed on March 29,
2018) and Father's opening brief (JROA doc. 93, filed on June 15, 2018) appear
to be identical except for the unnumbered second page of Grandfather's brief
(continued...)

with Hawai'i Rules of Appellate Procedure **(HRAP)** Rule 28(b)(4) (eff. 2016),[2] but it appears that Father and Grandfather are appealing from orders entered by the Family Court of the First Circuit **(Family Court)**[3] on November 10, 2016, January 18, 2017, and April 18, 2017. For the reasons explained below, we affirm all three orders.

## I.

KL **(Child)** is the child of Father and Respondent-Appellee NSL **(Mother)**. On January 7, 2003, the Family Court of the State of New York entered an order **(New York Custody Order)** awarding Father sole legal and physical custody of Child. Mother — the respondent in the New York proceeding — was granted supervised visitation.

Father initiated this case on January 25, 2016, by registering the New York Custody Order with the Family Court. Mother was named as the respondent. At that time, Child was living in North Carolina with Father's mother, BL **(Grandmother)**, but Father had not named Grandmother as a respondent. On January 29, 2016, Father filed a motion seeking the immediate return of Child to O'ahu. Father's motion was set to be heard by the Family Court on February 22, 2016.

On February 5, 2016, the Family Court of the State of New York entered another order **(New York Temporary Custody Order)**

---

[1](...continued)
(titled "Forward"), the handwriting on each brief, and the dates and signatures.

[2] On March 14, 2019, after the merit panel members were selected, this court issued an order striking Father's opening brief for failure to comply with HRAP Rule 28 and ordering that Father file an amended opening brief that fully complied with HRAP Rule 28 within thirty days from the date of the order. Father did not file an amended opening brief. This court sua sponte reinstates Father's opening brief in order to address the issues we believe the parties have tried to raise. See Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 420, 32 P.3d 52, 64 (2001) (noting that even though both sides' failure to comply with HRAP Rule 28(b)(4) warranted dismissal of appeal and cross-appeal, Hawaii's appellate courts have "consistently adhered to the policy of affording litigants the opportunity to have their cases heard on the merits, where possible").

[3] The Honorable Paul T. Murakami presided.

awarding temporary custody of Child to Grandmother and ordering Father and Mother to show cause why Grandmother should not be awarded sole legal and physical custody of Child.  The return date was set for February 23, 2016, in New York.

On February 9, 2016, the Hawai'i Family Court received a copy of an order (**North Carolina Temporary Custody Order**) that had been entered by the General Court of Justice of the State of North Carolina on January 27, 2016.  The North Carolina Temporary Custody Order awarded temporary custody and control over Child to Grandmother "until an order is entered by the state with exclusive, continuing jurisdiction or until and through February 26, 2016, whichever comes first[.]"

On February 9, 2016, the North Carolina General Court of Justice informed the Hawai'i Family Court that North Carolina declined to exercise jurisdiction over the custody dispute and would leave the determination of jurisdiction to New York and Hawai'i.

On February 18, 2016, Grandmother filed a motion to dismiss Father's ex parte motion for immediate return of child to O'ahu.  The motion was heard on February 22, 2016.  The Family Court notified the parties that the New York Family Court was exercising jurisdiction because New York was the originating jurisdiction of the New York Custody Order and Mother still lived in New York.  The Family Court continued the hearings on Father's motion for immediate return of Child and Grandmother's motion to dismiss until April 14, 2016.

On April 13, 2016, the New York Family Court entered a decision and order declining to exercise jurisdiction over the dispute concerning Child.  Father failed to appear at the April 14, 2016 continued Family Court hearing.  The Family Court entered an order denying Father's motion for immediate return of Child without prejudice, stating that Grandmother was an indispensable party pursuant to Hawai'i Family Court Rules (**HFCR**)

3

Rule 19 (eff. 2015) and that Father had failed to serve Mother with the motion.[4]

On April 22, 2016, Father filed a motion (**Father's Custody Motion**) seeking to name Grandmother as a respondent in the Hawai'i case, and for an order that Grandmother return Child to the custody of Father. Father's Custody Motion was set for hearing on May 12, 2016. On May 10, 2016, Grandfather filed a "Notice of Special Appearance and for Standing as Party[.]"

On May 12, 2016, the Family Court continued the hearing on Father's Custody Motion and ordered Grandmother to show cause why she should not be held in contempt for taking custody of Child (**OSC**). The return was set for June 16, 2016. On May 26, 2016, Grandmother filed a motion (**Grandmother's Custody Motion**) seeking custody of Child. On June 6, 2016, Grandmother filed a memorandum in opposition to Father's Custody Motion.

On June 16, 2016, Grandmother appeared at the continued hearing and OSC return date with counsel. The Family Court appointed Daisy Lynn B. Hartsfield as Child's guardian ad litem (**GAL**) and continued the matter for trial on July 27, 2016. The GAL filed an initial report on July 20, 2016, and a supplemental report on July 27, 2016.

On July 27, 2016, the Family Court heard testimony from the parties and from the GAL. On August 1, 2016, the Family Court entered an order awarding interim temporary custody of Child to Grandmother and set a further hearing for December 21, 2016. On September 28, 2016, Grandfather — as attorney for Father — filed a motion to recuse family court judge Paul T. Murakami. An order denying the motion was entered on November 10, 2016.

On December 14, 2016, the GAL filed a third report. An addendum to the report was filed on December 21, 2016.

The Family Court conducted a trial on December 21, 2016. Mother, Grandmother, and GAL appeared for the trial, but

---

[4]    The Honorable William J. Nagle, III signed the April 14, 2016 order.

neither Father nor Grandfather appeared. The Family Court orally denied Father's Custody Motion and granted Grandmother's Custody Motion. On January 18, 2017, the Family Court entered a written order denying Father's Custody Motion, granting Grandmother's Custody Motion, and awarding Grandmother fees, costs, and expenses she incurred to respond to Father's motion.

Between January 30 and March 31, 2017, Father and Grandfather filed six motions, which will collectively be referred to as the **"Post-Trial Motions."** The Post-Trial Motions were heard on April 6, 2017. The Post-Trial Motions, the filing date, and the Family Court's oral disposition of each during the hearing on April 6, 2017, were:

1.  Father's "Motion to Have Court Itself Get Out of the Case and Dismiss Guardian at [sic] Litem and Motion to Cancel December 21 Order of the Court Due to Fraud by Guardian Ad Litem Daisy Lynn Hartfield [sic] That She Had Mailed the Report," filed January 30, 2017, was denied.

2.  Father's "Motion to Set Aside Default Judgment," filed on February 23, 2017, was denied.

3.  "[Grandfather]'s Motion to Be Party in Above-Entitled Case," filed on March 15, 2017, was denied.[5]

4.  "[Grandfather's] Motion to Reconsider Order Awarding Custody to Parental [sic] Grandmother and Denying Return of Minor Child to Father," filed on March 15, 2017, was denied as moot.

5.  "[Father's] Motion to File Joinder Pro Se with [Grandfather's] Motion to Reconsider Order Granting Custody to Parental [sic] Grandmother and Denying Return of My Daughter to Father," filed on March 15, 2017, was denied as moot.

6.  Grandfather's "Ex-Parte Motion to Re-Schedule Hearing on Motion Scheduled to Be Heard on March 2, 2017," filed on March 31, 2017, was denied as moot.

The Family Court granted Grandmother's oral request to designate Father as a vexatious litigant.

On April 18, 2017, the Family Court entered a written order denying the Post-Trial Motions and awarding Grandmother

---

[5]     Grandmother's oral request for attorneys' fees and costs against Grandfather and to designate Grandfather as a vexatious litigant were also denied.

reasonable attorneys' fees, costs, and expenses she incurred to
respond to Father's motions.  On May 24, 2017, the Family Court
awarded $4,490.00 in reasonable attorneys' fees, costs, and
expenses to Grandmother pursuant to the court's order of
April 18, 2017.  On June 2, 2017, the Family Court awarded
$1,690.00 in reasonable attorneys' fees, costs, and expenses to
Grandmother pursuant to the court's order of January 18, 2017.
On June 21, 2017, the Family Court entered Findings of Fact and
Conclusions of Law for its April 18, 2017 order.  This appeal
followed.

## II.

Grandfather was never a party to the Family Court
proceeding.

> Generally, the requirements of standing to appeal are:
> (1) the person must first have been a party to the action;
> (2) the person seeking modification of the order or judgment
> must have had standing to oppose it in the trial court; and
> (3) such person must be aggrieved by the ruling, i.e., the
> person must be one who is affected or prejudiced by the
> appealable order.

Abaya v. Mantell, 112 Hawai'i 176, 181, 145 P.3d 719, 724 (2006)
(citations omitted).  However, "[Grandfather]'s Motion to Be
Party in Above Entitled Case" was treated by the Family Court as
an application for intervention under HFCR Rule 24.  An order
denying intervention under HFCR Rule 24 (eff. 2015) is
appealable.  Labayog v. Labayog, 83 Hawai'i 412, 419, 927 P.2d
420, 427 (App. 1996).  Thus, the Family Court's order of
April 18, 2017, to the extent it denied "[Grandfather]'s Motion
to Be Party in Above-Entitled Case," is the only order that
Grandfather has standing to appeal.

The Family Court ruled that Grandfather's motion to
intervene was untimely because the trial on Father's Custody
Motion and Grandmother's Custody Motion had been completed.  The
question of timeliness is a matter left to the sound discretion
of the trial court.  Ing v. Acceptance Ins. Co., 76 Hawai'i 266,
271, 874 P.2d 1091, 1096 (1994) (applying Hawai'i Rules of Civil

6

Procedure (**HRCP**) Rule 24). The Family Court did not abuse its discretion. Accordingly, the portion of the Family Court's order of April 18, 2017, denying "[Grandfather]'s Motion to Be Party in Above-Entitled Case" is affirmed.

The Family Court denied "[Grandfather's] Motion to Reconsider Order Awarding Custody to Parental Grandmother and Denying Return of Minor Child to Father" and "Ex-Parte Motion to Re-Schedule Hearing on Motion Scheduled to Be Heard on March 2, 2017" as being moot once Grandfather's motion to intervene was denied. Grandfather lacks standing to appeal those decisions. Abaya, 112 Hawai'i at 181, 145 P.3d at 724.

## III.

Father's opening brief does not specify which orders he is appealing or where in the record the orders and corresponding motions are located; it does not contain citations to the record on appeal in support of its factual allegations; it cites to no statutes, court rules, caselaw, or other authority to support its arguments. An appellate court is not obligated to speculate on the what and the why of the appeal, to do the work that should have been done by the appellant, or to sift through the record to determine the specific nature of the errors asserted but not documented. Omerod v. Heirs of Kaheananui, 116 Hawai'i 239, 263, 172 P.3d 983, 1007 (2007). We will address the Family Court orders we believe Father is challenging.

## A.

The Family Court's "Order Denying [Father's] Motion to Recuse Judge Paul T. Murakami," entered on November 10, 2016, is reviewed for abuse of discretion. State v. Ross, 89 Hawai'i 371, 375, 974 P.2d 11, 15 (1998). A family court abuses its discretion where (1) the family court disregards rules or principles of law or practice to the substantial detriment of a party litigant, (2) the family court fails to exercise its equitable discretion, or (3) the family court's decision clearly

exceeds the bounds of reason. <u>Hamilton v. Hamilton</u>, 138 Hawai'i 185, 197, 378 P.3d 901, 913 (2016).

"Hawai'i courts apply a two-part analysis in disqualification or recusal cases." <u>Chen v. Hoeflinger</u>, 127 Hawai'i 346, 361, 279 P.3d 11, 26 (App. 2012) (citing <u>Ross</u>, 89 Hawai'i at 377, 974 P.2d at 17). First, courts determine whether the alleged bias is covered by HRS § 601-7 (1993 & Supp. 2015), which pertains to cases of affinity or consanguinity, financial interest, prior participation, and actual judicial bias or prejudice. <u>Id.</u> This first step refers to judicial "disqualification." <u>Id.</u> In this case Father had not alleged, and the record does not establish, grounds for disqualification under HRS § 601-7.

Second, if HRS § 601-7 does not apply, courts "may then turn, if appropriate, to the notions of due process in conducting the broader inquiry of whether circumstances fairly give rise to an appearance of impropriety and reasonably cast suspicion on the judge's impartiality." <u>Id.</u> (cleaned up). A judge who ceases participating because of due process concerns is "recused." <u>Id.</u> The record in this case indicates that the Family Court did not disregard rules or principles of law or practice to Father's substantial detriment, or fail to exercise its equitable discretion, or clearly exceed the bounds of reason, in declining to recuse itself. The "Order Denying [Father's] Motion to Recuse Judge Paul T. Murakami," entered on November 10, 2016, is affirmed.

## B.

The Family Court's "Order Denying [Father]'s Motion and Granting Paternal Grandmother's Motion for Custody," entered on January 18, 2017, contains seventeen findings of fact. A family court's findings of fact are reviewed under the "clearly erroneous" standard. <u>Hamilton</u>, 138 Hawai'i at 197, 378 P.3d at 913. A finding of fact is clearly erroneous when the record lacks substantial evidence to support the finding, or despite substantial evidence in support of the finding, the appellate

court is nonetheless left with a definite and firm conviction that a mistake has been made. Id. "'Substantial evidence' is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. In this case each of the Family Court's findings of fact are supported by substantial evidence in the record, and we are not left with a definite or firm conviction that a mistake has been made. They are not clearly erroneous.

> [T]he family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Hamilton at 197, 378 P.3d at 913. Thus, we will not disturb the family court's decision on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Id. at 197, 378 P.3d at 913 (citations omitted). Father has not shown that the Family Court disregarded rules or principles of law or practice to his substantial detriment, or that the Family Court's decisions denying Father's Custody Motion and granting Grandmother's Custody Motion clearly exceeded the bounds of reason. The Family Court's "Order Denying [Father]'s Motion and Granting Paternal Grandmother's Motion for Custody," entered on January 18, 2017, is affirmed.

## C.

Three of the Post-Trial Motions denied by the Family Court's April 18, 2017 order were made by Father. Father's "Motion to Have Court Itself Get Out of the Case . . ." argued that the GAL somehow lied because the report that she signed on December 21, 2016, (the date of the continued trial) was not mailed to Father until December 22, 2016, as shown by the postmark. Father appears to be referring to the addendum to the GAL's third report, which was filed on December 21, 2016. Had Father attended the December 21, 2016 trial, he could have received his copy of the addendum in person. He appears to argue that the Family Court judge who appointed the GAL should be disqualified or recused because of the GAL's conduct. Father's

argument has no merit.   The Family Court did not abuse its discretion in denying the motion.

Father's "Motion to Set Aside Default Judgment" argued that Father thought the December 21, 2016 trial date "had been changed" because the trial "could not have been done without the [GAL's] Report" and Father claimed to have never received a report from the GAL.

> In general, a motion to set aside a default entry or a default judgment may and should be granted whenever the court finds (1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a wilful act.

BDM, Inc. v. Sageco, Inc., 57 Haw. 73, 76, 549 P.2d 1147, 1150 (1976).   A ruling on a motion to set aside a default is reviewed for abuse of discretion.   Gonsalves v. Nissan Motor Corp. in Hawaii, 100 Hawaiʻi 149, 158, 58 P.3d 1196, 1205 (2002).   The Family Court found that Father "had notice of the December 21, 2016 trial and failed to appear without any valid excuse."   The record on appeal in this case indicates that the Family Court did not abuse its discretion in denying Father's motion to set aside his default.

"[Father's] Motion to File Joinder Pro Se with [Grandfather]'s Motion to Reconsider Order Granting Custody to Parental [sic] Grandmother and Denying Return of My Daughter to Father," if filed in support of Grandfather's motion for reconsideration, was properly denied when Grandfather's motion was denied.   To the extent Father's motion sought independent relief for Father:

> The purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion.   Reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding.

Sousaris v. Miller, 92 Hawaiʻi 505, 513, 993 P.2d 539, 547 (2000) (cleaned up).   Father's motion presented no evidence or argument that could not have been presented during the December 21, 2016

trial.  The Family Court did not abuse its discretion when it denied Father's motion.

**IV.**

For the foregoing reasons, the Family Court's orders of November 10, 2016, January 18, 2017, and April 18, 2017, are affirmed.

DATED: Honolulu, Hawaiʻi, July 10, 2019.

On the briefs:

HL,
Petitioner-Appellee/Appellant,
Self-Represented.

AL,
Proposed Intervenor-Appellant
in CAAP-17-0000445,
Self-Represented.

Presiding Judge

Associate Judge

Associate Judge